IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| World Wide Stationery Manufacturing, Co., Ltd., | Case No. 3:11 CV 523 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Bensons International Systems, Inc., et al., | |
| Defendants. | |

## INTRODUCTION

Before the Court is Esselte Leitz GmbH & Co. KG's ("Esselte Leitz") Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 40). Plaintiff World Wide Stationary Manufacturing Co., Ltd. ("World Wide") has opposed (Doc. No. 47) and Esselte Leitz has replied (Doc. No. 50). World Wide brings claims against Esselte Leitz under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1338(a), 1367, and 2201.

## BACKGROUND

This case stems from a patent dispute relating to U.S. patent number 6,840,695 (the "'695 Patent"), titled "RING-BINDER MECHANISM," invented by Johann Horn and assigned to Esselte Leitz, who is the record owner of the patent.

Esselte Leitz is a German limited partnership with its headquarters and principal place of business in Stuttgart, Germany (Doc. No. 40-1 at 2). Esselte Leitz manufactures and sells certain office supplies, including ring binders with automatic locking ring mechanisms, primarily in European markets (Doc. No. 40-1 at 2). Though it does not directly sell its products in the United States, Esselte Leitz utilizes distributors, some who may sell Esselte Leitz products through other distributors in the United States (Doc. No. 40-1 at 2).

Esselte Corporation, a New York corporation, is a related, but separate legal entity (Doc. No. 13-2 at 1). Esselte Leitz and Esselte Corporation are affiliates with the same parent company -- Esselte Group Holdings. Esselte Corporation does not have, and has not had at any time in the past, any right, title, or interest in the '695 Patent. Esselte Corporation is not a successor in interest to Esselte Leitz, has never acquired any assets, obligations, or liabilities of Esselte Leitz, and has never consolidated with, merged with, or held any interest in Esselte Leitz (Doc. No. 13-2 at 2).

World Wide is a Hong Kong corporation with its principal place of business in Hong Kong, China (Doc. No. 22 at 1). World Wide is in the business of manufacturing "ring metals" (the mechanical portion of three-ring binders) in China and India, importing them into the United States for sale to customers and distributors (Doc. No. 47 at 6).

In September 2004, Esselte Leitz and World Wide entered into a non-exclusive license agreement (the "2004 Agreement"), in which Esselte Leitz granted World Wide ceratin license rights to manufacture and sell products covered by the '695 Patent in the United States. Pursuant to this agreement, World Wide pays royalties to both Esselte Leitz and Johann Horn, the inventor (Doc. No. 47 at 8). In March 2010, Esselte Leitz entered into certain other agreements regarding the '695 Patent with Bensons International Systems, Inc. ("Bensons"). Bensons is also a defendant in this case.

In June 2010, World Wide received a letter from Bensons claiming World Wide's ring metal products infringed one or more claims of the '695 Patent. According to World Wide, the letter threatened to file suit if World Wide continued to import or sell its products in the United States (Doc. No. 47 at 9). In response to this letter, World Wide filed suit for a declaratory judgment of patent non-infringement, ownership, and license rights of the '695 Patent. World Wide asks this Court to declare it has not committed any act of direct or indirect infringement of the '695 Patent with respect to products it makes, uses, or imports. World Wide also asserts a breach of contract claim against Defendants (Doc. No. 22 at 9).

Esselte Leitz appeared in this matter only to contest jurisdiction and, in that regard, filed a Motion to Dismiss arguing this Court lacks personal jurisdiction because this case does not arise out of any contacts by Esselte Leitz with Ohio, and because Esselte Leitz does not have any contacts with Ohio giving rise to personal jurisdiction (Doc. No. 40 at 1).

### CHOICE OF LAW

Personal jurisdiction issues in patent cases are governed by the law of the U.S. Court of Appeals for the Federal Circuit rather than the law of the regional circuit in which the action arose. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)). Therefore, the law of the Federal Circuit, rather than the Sixth Circuit, guides this Court in determining personal jurisdiction over Esselte Leitz.

### STANDARD OF REVIEW

A federal district court may exercise personal jurisdiction over a non-consenting out-of-state defendant only if two requirements are satisfied. *Patent Rights Protection Group, LLC v. Video Gaming Tech., Inc.*, 603 F.3d 1364, 1368 (Fed. Cir. 2010). First, the defendant must be amenable to

service of process. *Id.* Whether a defendant is amenable to service requires a determination of whether that defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Federal Civil Rule 4(k)(1)(A). This, in turn, involves examining the state's "long-arm" statute, which in this case requires an examination of the complementary provisions of R.C. § 2307.328 and Ohio Civil Rule 4.3(A)(1) (together, Ohio's "long-arm" statute). *Patent Rights*, 603 F.3d at 1369. Second, the exercise of personal jurisdiction over the defendant must be consistent with due process. *Id.* "The 'constitutional touchstone' of the due process inquiry 'remains whether the defendant purposefully established 'minimum contacts' in the forum State.'" *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Even if minimum contacts with the forum are established, district courts must consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.*

## DISCUSSION

### Esselte Leitz is Not Amenable to Service Under Ohio's "Long-Arm" Statute

The first part of this Court's analysis looks to the reach of Ohio's "long-arm" statute. It is well-established the Ohio "long-arm" statute does not grant Ohio courts jurisdiction to the limits of the Due Process Clause of the Fourteenth Amendment. *See Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 238 n.1 (1994). Instead, Ohio's "long-arm" provides "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting business in this state." R.C. § 2307.328(A)(1). While Ohio courts interpret "transacting business" broadly "to prosecute negotiations; to carry on business; to have dealings," *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990), the Ohio

4

Supreme Court held a non-resident's ties must create a "substantial connection" with Ohio to give rise to personal jurisdiction. *U.S. Sprint Commc'ns Co. P'ship v. K's Foods*, 68 Ohio St. 3d 181, 185 (1994). "With no better guidelines than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore, rely on a case-by-case determination." *Id.*; *Goldstein*, 70 Ohio St. 3d at 236.

Esselte Leitz argues it has not engaged in any activities in Ohio. Specifically, Esselte Lietz contends it has "not engaged in any activity in, or had any contact with, Ohio," does not "design, manufacture or sell goods in Ohio, does not advertise or solicit business in Ohio, and has not engaged in any negotiations in Ohio" (Doc. No. 40-1 at 4). Moreover, the only contract in dispute is the 2004 Agreement, "which is not a contract to supply services or goods in Ohio, and which has no connection with any activity in Ohio." Because it "has no footprint whatsoever in Ohio," Esselte Leitz argues it did not "transact business" in Ohio, and therefore Ohio's "long-arm" does not provide a basis for personal jurisdiction (Doc. No. 40-1 at 4–5).

World Wide disagrees. According to World Wide, "Esselte Leitz has carried on business and engaged in negotiations with World Wide in Ohio." World Wide also argues "obligations and duties" resulting from the 2004 Agreement constitute "transacting business" in Ohio (Doc. No. 47 at 8–11).

Nothing in the record shows Esselte Leitz engaged in negotiations with World Wide representatives in Ohio. In fact, World Wide's own evidence -- a Declaration by Mark Dawkins -- indicates a single meeting between the parties took place in Chicago, Illinois, not in Ohio (Doc. No. 47-1 at 3–4). World Wide also argues it received an e-mail from Gary Brooks. Brooks, however, is the CEO of Esselte Corp., a separate legal entity from Esselte Leitz (Doc. No. 13-3 at 2).

Furthermore, there is no evidence the 2004 Agreement has any connection with activity in Ohio. Unlike the cases cited by World Wide, this is not a case where a defendant transacted business by negotiating in Ohio with Ohio entities. *See Hammermill Mfg. Co. v. Quality Rubber Prods., Inc.*, 82 Ohio App. 3d 369 (1992) (holding personal jurisdiction existed when defendants negotiated in Ohio with an Ohio corporation); *Goldstein*, 70 Ohio St. 3d at 232 (holding personal jurisdiction existed when defendants entered into a contractual relationship with partnership because a plurality of limited partners were from Ohio). Here, World Wide, a Hong Kong Corporation, entered into a licensing agreement with Esselte Leitz, a German partnership. Even though Dawkins, World Wide's Manager of U.S. Operations, is an Ohio resident, there is no evidence any negotiations or communications took place in Ohio. Nothing supports the conclusion Esselte Leitz has sufficient ties to create a "substantial connection" with Ohio. *See U.S. Sprint Commc'ns*, 68 Ohio St. 3d at 185. Accordingly, Esselte Leitz has not "transacted business" in Ohio and is not within the reach of Ohio's "long-arm" statute.

**Exercising Personal Jurisdiction Over Esselte Leitz Would Violate Due Process**

Even if Esselte Leitz was amenable to service in Ohio, the exercise of jurisdiction would violate due process under the second part of this Court's analysis, which requires Esselte Leitz to have sufficient "minimum contacts" with Ohio such that the maintenance of this suit will not offend traditional notions of "fair play and substantial justice." *Patent Rights*, 603 F.3d at 1369. In analyzing this due process limitation to personal jurisdiction, courts recognize a distinction between "general" jurisdiction and "specific" jurisdiction. *See, e.g.*, *Goodyear Dunlop Tires Operations S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011); *Burger King Corp.*, 471 U.S. at 472–73 n.15. General jurisdiction -- which is only appropriate when a non-resident defendant's contacts with the forum are

6

"continuous and systematic" -- is not alleged in this case. *Id.* at 416. Instead, World Wide argues Esselte Leitz's contacts with Ohio are sufficient to establish specific jurisdiction.

The Federal Circuit has set forth a three-factor test for determining whether asserting specific personal jurisdiction over a non-resident defendant comports with due process. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). Under the test: (1) Esselte Leitz must have "purposefully directed" its activities at Ohio residents; (2) World Wide's claim must "arise out of or relate to" Esselte Leitz's activities with Ohio; and (3) the assertion of personal jurisdiction must be "reasonable and fair." *Id.*; *Inamed Corp.*, 249 F.3d at 1360 (Fed. Cir. 2001). "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Id.* Under this test, this Court may assert specific jurisdiction, even if Esselte Leitz's contacts are "isolated and sporadic," so long as the case arises out of or relates to those contacts. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009) ("[A] 'substantial connection' with a forum arising out of a 'single act can support jurisdiction.'").

Under the first factor, this Court must determine whether Esselte Leitz purposefully directed activities at Ohio residents. Esselte Leitz asserts it "has not taken any acts to avail itself of the rights and privileges of doing business in Ohio," and "has not attempted to avail itself of any market in Ohio" (Doc. No. 40-1 at 8). According to Esselte Leitz, it has "done nothing to invoke the benefits or protections of the laws of Ohio," has "not registered to do business in Ohio, does not have an agent for service of process in Ohio, does not own, lease or rent property in Ohio, has no operations or

7

employees in Ohio, and does not sell goods into, direct advertisement toward, or otherwise solicit sales in Ohio" (Doc. No. 40-1 at 8). World Wide is unable to show otherwise.

World Wide argues Esselte Leitz purposefully directed its activities at Ohio because the "Leitz" brand can be found on shelves of Ohio retailers (Doc. No. 47 at 7). This argument fails for two reasons. First, World Wide misstates the Declaration of Dawkins. Dawkins states he is aware that products with "Esselte, Oxford, and Pendaflex" brands are sold in Ohio (Doc. No. 47-1 at 5). World Wide incorrectly cites Dawkins as saying that "Esselte, Leitz, Oxford, Pendaflex, Rapid and Xyron brands . . . can be found on the shelves of" Ohio retailers (Doc. No. 47 at 2–3). Dawkins never claims "Leitz" brand products -- a separate and distinct brand -- are sold in Ohio. Second, Esselte Leitz sells some of its products, including ring binders, through distributors, but does not design, manufacture, or sell products in Ohio. Distribution agreements alone are insufficient to satisfy due process requirements. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011).

In *J. McIntyre*, a four-justice plurality of the Supreme Court reversed a New Jersey Supreme Court decision finding jurisdiction proper based in part on a distribution agreement. 131 S. Ct. at 2780. The Court emphasized "the exercise of judicial power is not lawful unless the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefit and protections of its laws." *Id.* at 2785 (internal citations omitted). The defendant did not sell its products to buyers in the United States beyond the distributor, and the plaintiff did not allege the distributor was under the defendant's control. *Id.* at 2786. Furthermore, the defendant had no offices in the forum, did not pay taxes or own property in the forum, did not have any operations or employees in the forum, and did not target sales to the forum (though it did target sales to the United States). *Id.* at 2786–91. As in this case, the defendant had U.S. patents, and some of its

8

products ended up in the forum. *Id.* The four-justice plurality, however, affirmed the limitations on personal jurisdiction and held the defendant did not purposefully avail itself of the forum state. *Id.* at 2790.

Cases cited by World Wide differ in an important manner from the instant case: unlike Esselte Leitz, defendants in those cases engaged in business directly with the forum and entered into contracts with forum-based companies. *See, e.g.*, *Akro*, 45 F.3d at 1541 (exercising personal jurisdiction when non-resident defendant communicated repeatedly to Ohio and entered into agreements with two separate Ohio corporations); *Deprenyl Animal Health v. University of Toronto*, 297 F.3d 1343, 1352 (Fed. Cir. 2002) (exercising personal jurisdiction because non-resident defendant engaged in repeated communications with the forum, traveled to the forum to negotiate and amend a license agreement, and entered into the agreement with a forum-based company).

This case is analogous to *J. McIntyre* and distinguishable from the cases cited by World Wide. Esselte Leitz is a foreign company with no offices, properties, personnel, or operations in Ohio. While Esselte Leitz owns a U.S. patent, it has not targeted sales to Ohio. Esselte Leitz entered into a licensing agreement with a Hong Kong corporation with its principal place of business in Hong Kong. Although World Wide has operations in Ohio, there is no evidence Esselte Leitz negotiated -- or even communicated -- with World Wide in Ohio. Nothing supports the conclusion Esselte Leitz directed business at Ohio and/or entered into a contract with an Ohio-based company.

World Wide alternatively argues Esselte Leitz's licensing activities relating to a U.S. patent and directed toward an Ohio resident are sufficient to show Esselte Leitz has purposefully availed itself of the benefits of Ohio law. This argument also fails for two reasons. First, as discussed above, there is no evidence Esselte Leitz's licensing activities were directed toward an Ohio resident.

9

Although Dawkins, World Wide's representative, is an Ohio resident, the negotiations were not directed at him -- they were purposefully directed at World Wide, a Hong Kong corporation.

Second, World Wide misinterprets *Deprenyl*, where the Federal Circuit held "[l]icensing the practice of the invention claimed in a United States patent constitutes additional purposeful availment of the benefits of *United States patent law*." 297 F.3d at 1354 (emphasis added). The court did not hold licensing constitutes purposeful availment of the forum state. Instead, the court explained patentees residing outside the United States are required to either "designate an agent residing somewhere in the United States for service of process or to submit to jurisdiction in the United States District Court for the District of Columbia." *Id.*

Furthermore, licensing -- even when coupled with royalty payments -- is not enough to create sufficient minimum contacts. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006). "[A] defendant may not be subjected to personal jurisdiction . . . where the defendant has successfully licensed [a] patent in the forum state, even to multiple non-exclusive licensees, but does not, for example, exercise control over the licensee's sales activities and, instead, has no dealings with those licensees beyond the receipt of royalty income." *Id.* (citing *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1357–58 (Fed. Cir. 1998)). To find a non-resident defendant's activities were purposefully directed at a forum, the Federal Circuit requires a showing of "other activities" relating to the patent. *See, e.g.*, *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008). "Examples of these 'other activities' include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Id.*

World Wide fails to demonstrate Esselte Leitz has engaged in "other activities" relating to the '695 Patent. There is no allegation World Wide has an exclusive license over the '695 Patent, or that Esselte Leitz exercises control over World Wide's sales activities. Moreover, there is no evidence Esselte Leitz has engaged in other dealings with World Wide, or initiated patent enforcement actions in Ohio. Also, the royalties collected by Esselte Leitz from World Wide, pursuant to the 2004 License Agreement, are unconnected to Ohio; they are payments from a Hong Kong corporation to a German partnership.

## CONCLUSION

World Wide has not established Esselte Leitz engaged in conduct purposefully directed at Ohio -- the record reveals no intent to serve the Ohio market or that Esselte Leitz purposefully availed itself of the benefits and protections of Ohio law. The exercise of judicial power over Esselte Leitz would be contrary to law, and unconstitutional under the Due Process Clause. Because World Wide cannot establish minimum contacts or purposeful availment, this Court need not determine whether this case "arises out of or relates to" Esselte Leitz's activities with Ohio, or whether assertion of personal jurisdiction would be "reasonable and fair." *Nuance Commc'ns*, 626 F.3d at 1231. For all the foregoing reasons, the Motion to Dismiss is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

December 9, 2011