IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| World Wide Stationery Manufacturing, Co., Ltd., | Case 3:11 CV 523 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER RE: PERSONAL JURISDICTION |
| -vs- | JUDGE JACK ZOUHARY |
| Bensons International Systems, Inc., et al., | |
| Defendants. | |

### INTRODUCTION

Before this Court is Counterclaim Defendant Chun Yuen (Simon) To's Motion To Dismiss for Lack of Personal Jurisdiction (Docs. 79 & 80). Simon To ("To") is the chief executive officer and majority shareholder of World Wide Stationery Manufacturing Co., Ltd. ("World Wide") (Doc. 80-2 at 1). Counterclaimant Bensons International Systems, Inc. ("Bensons") opposed (Doc. 94), and To replied (Doc. 100). Bensons brings claims against To under the patent laws of the United States, Title 35 of the United States Code, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1338(a), 1367, and 2201.

### BACKGROUND

This case stems from a patent dispute relating to U.S. patent number 6,840,695 (the "'695 Patent"), titled "RING-BINDER MECHANISM," invented by Johann Horn and assigned to Esselte Leitz, record owner of the patent.

World Wide, a Hong Kong corporation with its principal place of business in China, manufactures and sells office supplies, including "ring metals" (the mechanical portion of three-ring binders) throughout the world (Doc. 80-2 at 2). Bensons is one of several United States distributors World Wide uses to sell its EZ-Touch and EZ-Comfort ring metals -- two of the accused products in this case (Doc. 80-2 at 4). None of the distributors reside in Ohio (Doc. 80-2 at 5).

World Wide Stationery USA, a trade name registered in Ohio, is a related, but separate legal entity from World Wide (Docs. 80-1 at 1, 80-2 at 2). The name was registered for tax identification and customs clearing purposes, and neither To nor World Wide own a stake in the name (Doc. 80-2 at 2). World Wide's Ohio business activities are limited to three people who manage customer service and logistics related to World Wide's United States sales (Doc. 80-2 at 3).

World Wide's U.S. operations are supervised by Mark Dawkins from an office located in Fremont, Ohio (Doc. 47-1 at 1). Dawkins is responsible for delivering sales and profit growth, as well as managing customer relations, in the United States and Europe (Doc. 47-1 at 2). Although he is not an employee of World Wide, Dawkins is under contract with the company, and has represented World Wide since 2007 (Docs. 47-1 at 2, 80-2 at 3). In his capacity as World Wide's CEO, To initiated the business relationship and occasionally offered Dawkins guidance over general sales objectives; however, Dawkins managed his own representation of World Wide in the U.S. (Docs. 94 at 5, 100-1 at 3–5). Dawkins' primary method of communication with To was by telephone from the Ohio office (Doc. 94 at 5).

World Wide's U.S. sales activities are conducted from Hong Kong (Doc. 100-1 at 4). No manufacturing, importation or billing activities occur in Ohio (Doc. 80-2 at 3–5). Distributors such

2

as Bensons submit purchase orders directly to World Wide's office in Hong Kong, and invoices issue from Hong Kong (Doc. 80-2 at 5). To has never visited Ohio (Doc. 80-2 at 2).

In June 2010, World Wide received a letter from Bensons claiming World Wide's ring metal products infringed one or more claims of the '695 Patent. In response to this letter, World Wide filed suit for a declaratory judgment of patent non-infringement, ownership, and license rights of the '695 Patent. Later, Bensons asserted a counterclaim, alleging To induced infringement of the Patent by "knowingly and intentionally causing World Wide Stationery USA [to] import, sell and offer for s[ale]" the accused products (Doc. 69-1 at 1–2).

To appeared in this matter only to contest jurisdiction and, in that regard, filed a Motion to Dismiss, arguing this Court lacks personal jurisdiction because he does not have any contacts with Ohio giving rise to personal jurisdiction (Doc. 80 at 1).

## CHOICE OF LAW

Personal jurisdiction issues in patent cases are governed by the law of the U.S. Court of Appeals for the Federal Circuit rather than the law of the regional circuit in which the action arose. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)). Therefore, the law of the Federal Circuit, rather than the Sixth Circuit, guides this Court in determining personal jurisdiction over To.

## STANDARD OF REVIEW

A federal district court may exercise personal jurisdiction over a non-consenting out-of-state defendant if two requirements are satisfied. *Patent Rights Protection Group, LLC v. Video Gaming Tech., Inc.*, 603 F.3d 1364, 1368 (Fed. Cir. 2010). First, the defendant must be amenable to service of process. *Id.* Whether a defendant is amenable to service requires a determination of whether that

defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Federal Civil Rule 4(k)(1)(A). This, in turn, involves examining the state's "long-arm" statute, which in this case requires an examination of R.C. § 2307.382 and Ohio Civil Rule 4.3(A)(1) (together, Ohio's "long-arm" statute). *Patent Rights*, 603 F.3d at 1369. Second, the exercise of personal jurisdiction over the defendant must be consistent with due process. *Id.* "The 'constitutional touchstone' of the due process inquiry 'remains whether the defendant purposefully established 'minimum contacts' in the forum State.'" *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Even if minimum contacts are established, district courts must consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.*

## DISCUSSION

### To is Not Amenable to Service Under Ohio's "Long-Arm" Statute

The first part of this Court's analysis looks to the reach of Ohio's "long-arm" statute. It is well-established the Ohio "long-arm" statute does not grant jurisdiction to the limits of the Due Process Clause of the Fourteenth Amendment. *See Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 238 n.1 (1994). Instead, Ohio's "long-arm" provides "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this state." R.C. § 2307.382(A)(1). "A nonresident's mere solicitation of business in Ohio does not constitute transacting any business. . . . But where a nonresident initiates, negotiates a contract, and through a course of dealing becomes obligated to make payments to an Ohio corporation, that nonresident" is transacting business. *Mustang Tractor & Equip. Co. v. Sound Environmental Serv., Inc.*, 104 Ohio Misc. 2d 1, 7 (Ohio Com. Pl. 1999). Patentees do not establish

sufficient basis for personal jurisdiction absent a "binding obligation" to an Ohio entity, despite attempts to negotiate a contract. *See Hildebrand v. Steck Mfg. Company, Inc.*, 279 F.3d 1351, 1356 (Fed. Cir. 2002).

To argues he has not engaged in any activities in Ohio, and contends that he has never "entered into or negotiated any contract within the state of Ohio" (Doc. 80-2 at 3). However, that is inaccurate. Speaking with Dawkins about opportunities with World Wide, To began negotiating a binding contract for Dawkins' services, which were to be conducted out of a sales office in Fremont, Ohio. Moreover, To offered Dawkins guidance over his representation of World Wide and entered into sales discussions with Dawkins while Dawkins was in Ohio. These facts evidence an ongoing business relationship with Ohio. Because he created a binding obligation with an Ohio entity, To has transacted business in Ohio. Therefore, at least in his capacity as a corporate officer, he is amenable to service in Ohio.

World Wide maintains that even if To is amenable to service in his official capacity, he is protected from suit in his individual capacity under the fiduciary-shield doctrine (Doc. 100 at 2), which "prevents the court from considering an individual's acts done in an official capacity when analyzing whether the individual is subject to personal jurisdiction in the forum state." *State ex rel. DeWine v. S&R Recycling, Inc.*, 195 Ohio App. 3d 744, 752 (Ohio Ct. App. 2011).

Bensons responds that personal jurisdiction may be exercised over To because he induced infringement in Ohio (Doc. 94 at 2). For support, Bensons cites *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1316 (Fed. Cir. 2010). However, that case addresses whether personal *liability* may be attached to a corporate officer in his personal capacity, not whether the court may attach *jurisdiction*. *Id.* ("[C]orporate officers . . . may be personally liable for inducing

5

infringement."). Even if an individual defendant may be liable for inducement of infringement, it does not follow that he is subject to jurisdiction in the forum. *See S&R Recycling*, 195 Ohio App. 3d at 752 (cases addressing the personal liability of a corporate defendant do not provide a basis to extend personal jurisdiction).

Ohio courts recognize a fiduciary shield that protects corporate officers from assertion of jurisdiction over them, but they do not apply it when the defendant was "personally involved. . . . in a transaction giving rise to the cause of action, and [was] physically present in the state." *Walker v. Concoby*, 79 F. Supp. 2d 827, 832 (N.D. Ohio 1999). Physical presence of the officer in the forum state is required to overcome the fiduciary-shield doctrine. *See, e.g.*, *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 931 (6th Cir. 1974) (recognizing that if "suits against officers of national corporations were [in any instance] permitted, the individuals could be sued in every state of the union whenever they make telephone calls or write letters to a customer. . . ."); *Diebold, Inc. v. Firstcard Fin. Servs., Inc.*, 104 F. Supp. 2d 758, 761 (N.D. Ohio 2000) (denying exercise of personal jurisdiction because the defendant was never physically present in Ohio, even though he was involved in negotiations giving rise to the claim).

Ohio courts may otherwise exercise jurisdiction over corporate officers when "control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own," *S&R Recycling*, 195 Ohio App. 3d at 752. It must be shown that the corporation is a mere "alter ego" or facade for the operations of the individual. *Id.* at 753. Even if the individual is the sole shareholder of the corporation, this fact alone does not prove the "corporation has no separate mind, will or existence of its own." *Id.*

Here, solicitations of Dawkins were made by To in his capacity as CEO of World Wide. To's ongoing communications with Dawkins concerning the growth of World Wide were also made in his capacity as a corporate officer. Even if To was personally involved in negotiations giving rise to the infringement claim, he was never physically present in Ohio (Doc. 80-2 at 2). Furthermore, Bensons has alleged no facts showing World Wide is an "alter ego" for To's operations. While To may be a majority shareholder of World Wide, the company follows corporate formalities, is controlled by multiple directors and shareholders, and maintains corporate records (Doc. 80-2 at 1–2). Therefore, the fiduciary-shield doctrine has not been overcome, and jurisdiction may not be asserted over him in Ohio. To has not "transacted business" in Ohio in his personal capacity and is not within the reach of the state's "long-arm" statute.

**Exercising Personal Jurisdiction Over To Would Violate Due Process**

Even if To were amenable to service in Ohio, the exercise of jurisdiction would violate due process under the second part of this Court's analysis, which requires To to have sufficient "minimum contacts" with Ohio such that the maintenance of this suit will not offend traditional notions of "fair play and substantial justice." *Patent Rights*, 603 F.3d at 1369. In analyzing this due process limitation to personal jurisdiction, courts recognize a distinction between "general" jurisdiction and "specific" jurisdiction. *See, e.g.*, *Goodyear Dunlop Tires Operations S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011); *Burger King Corp.*, 471 U.S. at 472–73 n.15. General jurisdiction -- which is only appropriate when a non-resident defendant's contacts with the forum are "continuous and systematic" -- is not alleged in this case. *Id.* at 416. Instead, Bensons argues To's contacts with Ohio are sufficient to establish specific jurisdiction.

7

The Federal Circuit has set forth a three-factor test for determining whether asserting specific personal jurisdiction over a non-resident defendant is consistent with due process. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). Under the test: (1) To must have "purposefully directed" his activities at Ohio residents; (2) Bensons' Counterclaim must "arise out of or relate to" To's activities with Ohio; and (3) the assertion of personal jurisdiction must be "reasonable and fair." *See Id.*; *Inamed Corp.*, 249 F.3d at 1360 (Fed. Cir. 2001). "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Id.* Under this test, this Court may assert specific jurisdiction, even if To's contacts are "isolated and sporadic," so long as the case arises out of or relates to those contacts. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009) ("[A] 'substantial connection' with a forum arising out of a 'single act can support jurisdiction.'").

Under the first factor, this Court must determine whether To purposefully directed activities at Ohio residents. To asserts he does not "own, rent, or lease any real property in Ohio" or "maintain any bank accounts in Ohio," and has not "conducted . . . any personal business within Ohio" (Doc. 80-2 at 2). He also asserts he has "never personally directed or controlled the day to day activities of the . . . representatives for World Wide in Ohio" and has never personally "negotiated any contract within the state of Ohio" (Doc. 80-2 at 3).

Bensons argues To purposefully directed activities at Ohio by "directing Mr. Dawkins to sell infringing products" through his "contact with World Wide's U.S. sales office (located in Fremont, Ohio)" (Doc. 94 at 6). According to Bensons, even if this contact was made in his role as corporate officer, "there is no need to pierce the corporate veil" because he may be personally liable for

8

inducing infringement (Doc. 94 at 6). This argument fails for two reasons. First, as stated above, even if a corporate officer may be liable for inducement of infringement, it does not follow that he is subject to jurisdiction in the forum. Second, the fiduciary-shield doctrine prevents this Court from asserting jurisdiction over To based on his communications with Dawkins over telephone, as these communications stem from his role as a World Wide officer (Doc. 100 at 7).

Furthermore -- and perhaps more importantly -- Bensons' claim of inducing infringement does not arise out of or relate To's contact with Dawkins and others in Ohio. Bensons alleges To "direct[ed] and contract[ed] individuals like Mr. Dawkins to supervise sales in Ohio" (Doc. 94 at 3). But Dawkins does not "supervise sales" or "sell infringing products" *to* Ohio. Rather, he serves as a manager of World Wide's North American representation *from* Ohio (Doc. 80-2 at 3). Dawkins contends the business activities emanating from his office are limited to customer service and logistics -- not product sales (Doc. 100-1 at 4). In contrast, World Wide's U.S. sales activities are coordinated and conducted from Hong Kong (Doc. 100-1 at 4). None of World Wide's allegedly infringing products are sold to Ohio residents (Doc. 80-2 at 4–5). Because this infringement suit arises out of product sales, as opposed to customer service, logistics, or regional representation, it does not arise out of To's contacts with Ohio; therefore, Bensons has not established To's purposeful availment or minimum contacts with Ohio.

Finally, the assertion of personal jurisdiction over To would not be "reasonable and fair." *Nuance Commc'ns*, 626 F.3d at 1231. In answering this question, courts must consider "the burden on the defendant. . . the forum State's interest in adjudicating the dispute. . . [and] the plaintiff's interest in obtaining convenient and effective relief. . . ." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Here, bringing To from Hong Kong to Ohio to defend himself would

impose a significant burden, and because Bensons is a New Jersey corporation, Ohio has a diminished interest in this matter. Moreover, Bensons' interest in relief is unaffected because it may still proceed against World Wide without joining To as a party. Therefore, it would not comport with "fair play and substantial justice" to extend jurisdiction over To in this suit. *World-Wide Volkswagen*, 444 U.S. at 292 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

## CONCLUSION

Bensons has not established To personally engaged in conduct purposefully directed at Ohio -- the record reveals no intent to serve the Ohio market or that To purposefully availed himself of the benefits and protections of Ohio law. The exercise of judicial power over him would be contrary to law, and unconstitutional under the Due Process Clause. Bensons has not shown To is amenable to service under the Ohio "long arm" statute, nor has it established minimum contacts or the exercise of jurisdiction would comport with "fair play" and justice. For all the foregoing reasons, the Motion to Dismiss is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

July 13, 2012