IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| World Wide Stationery Manufacturing, Co., Ltd., | Case No. 3:11 CV 523 |
| Plaintiff, | MEMORANDUM OPINION <u>AND ORDER RE: INFRINGEMENT</u> |
| -vs- | JUDGE JACK ZOUHARY |
| Bensons International Systems, Inc., et al., | |
| Defendants. | |

*One Ring to rule them all,*
*One Ring to find them,*
*One Ring to bring them all*
*and in the darkness bind them.*

J.R.R. TOLKIEN, THE FELLOWSHIP OF THE RING (1954).

## INTRODUCTION

In this patent dispute, Plaintiff World Wide Stationary Manufacturing Co. ("World Wide") asks for a declaratory judgment of patent non-infringement, ownership, and license rights for U.S. Patent No. 6,840,695 (the "'695 Patent"), titled "RING-BINDER MECHANISM." World Wide brings its claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1338(a), 1367, and 2201.

Pending before this Court is World Wide's Motion for Summary Judgment on the Issue of Non-Infringement (Doc. 81). World Wide contends Bensons cannot prove the accused ring metals, that are the subject of this lawsuit, contain each and every element of the patent claims asserted.

Defendant Bensons International Systems, Inc. ("Bensons") disagrees, arguing World Wide's position contradicts the specification and would render the language of the claim "nonsensical." Bensons also asserts that summary judgment is inappropriate, as the evidence supports a basis for a reasonable fact-finder to decide in its favor. The matter has been fully briefed (Docs. 81-1, 89 & 93).

## BACKGROUND

World Wide is one of the world's largest manufacturers of ring metals, which are the metal devices used in ring binders. The ring metals are manufactured in China and India and imported into the United States for sale to customers and distributors. The dispute in this case stems from a patent that covers a specific category of ring metals referred to as "automatic locking" ring metals. These ring metals automatically lock when the rings of the device are in the closed position, preventing the re-opening of the rings without first being unlocked. The relevant patent, patent number '695, was invented by Johann Horn and assigned to Esselte Leitz GmbH & Co. KG's ("Esselte Leitz"), who is the record owner of the Patent and a former defendant in this action. *See* Doc. 63.

In September 2004, Esselte Leitz and World Wide entered into a non-exclusive license agreement, in which Esselte Leitz granted World Wide license rights to manufacture and sell products covered by the '695 Patent in the United States. However, prior to this agreement, Mr. Horn and Esselte Leitz granted certain rights relating to the Patent to Bensons, who is a customer of World Wide and a distributor of ring metals in the United States. Essentially, Bensons purchases the ring metals from World Wide and distributes them to binderies, who then assemble the completed ring binders ultimately sold in stores.

Relying on the license it obtained from Esselte Leitz, and assuming Esselte Leitz's earlier grant of rights to Bensons would not interfere with its own license, World Wide developed and began

2

selling automatic locking ring metals. In June 2010, World Wide received a letter from Bensons claiming its products infringed one or more claims of the '695 Patent, and threatening suit if World Wide continued to import or sell its products in the United States. Specifically, Bensons alleged three different ring metals sold by World Wide infringe the Patent: One-Touch, the EZ-Touch, and the EZ-Comfort III. The pertinent structures of these ring metals are the same with respect to Claim 1 of the '695 Patent, the claim limitation at issue in this case, which reads (Doc. 1-4 at 18):

> A ring binder mechanism comprising . . . at least two half-rings (16) longitudinally spaced apart and rigidly connected with each of the carrier rails (20), wherein said half-rings (16) extend through openings (12) in a housing wall (13) and together form a ring (14), . . . .

In response to this letter, World Wide filed this action seeking a declaration of patent non-infringement, ownership, and license rights of the '695 Patent. World Wide now asks this Court to enter summary judgment in its favor and declare it has not committed any act of direct or indirect infringement with respect to products it makes, uses, or imports.

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, this Court must draw all inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether

the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

**ANALYSIS**

Determining patent infringement is a two-step process. *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1311 (Fed. Cir. 2005); *AFG Indus., Inc. v. Cardinal IG Co.*, 375 F.3d 1367, 1371 (Fed. Cir. 2004); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). First, this Court must construe, as a matter of law, the asserted claims. *NTP, Inc.*, 418 F.3d at 1311. Second, the Court must compare the properly construed claims with the accused products to reach a finding regarding infringement. *Id.* Generally, the patentee has the burden of showing that the accused products contain each limitation of the asserted claim, either literally or under the doctrine of equivalents. *Catalina Mktg. Int'l v. Coolsavings.com*, 289 F.3d 801, 812 (Fed. Cir. 2002). However, where the relevant aspects of the accused products' structure and operation are undisputed, the question of wether those products infringe on the claims of a patent turns solely on the interpretation of those claims. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999). Because World Wide and Bensons do not dispute any relevant fact regarding the accused products, but rather disagree over claim interpretation, "the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996).

As an initial matter, this Court notes that a *Markman* Hearing was held in December 2011, where the Court construed the only disputed claim term in this case, which reads (Doc. 1-4 at 18):

> [A]t least one blocking element (32, 32') is pre-tensioned in the direction of the closed position under the influence of a closing spring (36, 36').

4

*See* Doc. 66. Nearly five months after this Court's *Markman* Opinion, the parties once again dispute the language of the '695 Patent. This time, however, the disputed language is found in a different limitation of Claim 1, which reads (Doc. 1-4 at 18):

> A ring binder mechanism comprising . . . at least two half-rings (16) longitudinally spaced apart and rigidly connected with each of the carrier rails (20), wherein said half-rings (16) extend through openings (12) in a housing wall (13) and together form a ring (14), . . . .

Therefore, once again, this Court must navigate the "Mines of Moria" in an attempt to construe the correct scope of the disputed claim. *See Johnson*, 175 F.3d at 988.

### *Claim Construction: Round Two*

As previously stated, it is the duty of this Court, not a jury, to construe a patent claim. *Markman*, 52 F.3d at 979. While "[i]t is a 'bedrock principle' of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude," a disputed claim must be construed "in the context of the entire patent, including the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (quotation omitted). Indeed, a patent's intrinsic record "provides the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of the invention." *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005). In that regard, the Federal Circuit instructed:

> The claims, of course, do not stand alone. Rather, they are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims. For that reason, claims must be read in view of the specification, of which they are part. As we stated in *Vitronics*, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.

*Phillips*, 415 F.3d at 1315 (quotations omitted). Accordingly, this Court cannot look at the ordinary meaning of the disputed language in a vacuum. *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005). Rather, this Court "must look at the ordinary meaning in the context of the written description and the prosecution history." *Id.* (citing *DeMarini Sports, Inc. v. Worth*, 239 F.3d 1314, 1324 (Fed. Cir. 2001)).

World Wide argues the disputed language in Claim 1 of the '695 Patent has a single ordinary meaning and, because its accused products fall outside that meaning, it is entitled to summary judgment on the issue of infringement. Specifically, World Wide contends that the disputed limitation is best interpreted by one skilled in the art as requiring that "at least two half-rings must be 'longitudinally spaced apart' . . . ; and [that] each of the half-rings must be 'rigidly connected with each of the carrier rails.'" (Doc. 81-1 at 5). According to World Wide, the accused products comprise at least two half-rings that are longitudinally spaced apart, but do not infringe on the '695 Patent because, as shown in Figure 1, each half-ring of the accused products is only rigidly connected to *one* of the carrier rails -- not with "each of the carrier rails" (Doc. 81-1 at 6).



*Figure 1.* Photograph of half-rings in the accused products (Doc. 81-1 at 6).

World Wide offers an alternative construction, arguing one skilled in the art could also interpret the disputed limitation as "allowing one of the 'at least two half-rings' to be 'rigidly

6

connected' to the first two carrier rails, and the second half-ring to be 'rigidly connected' to the second carrier rail at some longitudinal distance from the first half-ring," as depicted in Figure 2 (Doc. 81-1 at 6–8).



*Figure 2.* Photograph of two half-rings at different positions relative to the longitudinal dimensions of the device (Doc. 81-1 at 6).

Because the "said half-rings" in the latter part of the claim limitation are the "at least two half-rings longitudinally spaced apart" described in the first part of the limitation, those are the half-rings that must, under the claim language, "together form a ring" (Doc. 81-1 at 8). World Wide argues it does not infringe the '695 Patent because the half-rings that "together form a ring" on the accused products are on adjacent carrier rails and laterally -- not longitudinally -- spaced apart.

World Wide would have this Court look at the words of the disputed claim with no context of what a ring metal actually does and how it works. Indeed, both of World Wide's proposed constructions would render the invention non-functional and thus nonsensical, which of course, is disfavored under the patent laws. *See Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1370 (Fed. Cir. 2008) ("We decline to adopt a construction that would effect this nonsensical result."). A ring-binder mechanism with half-rings that could never form a ring is hardly an invention worth patenting. It would be absurd to construe a claim such that it would be inoperative, especially given the fact that an alternative, reasonable construction is available. *See*

7

*Talbert Fuel Sys. Patents Co. v. Uncal Corp.*, 275 F.3d 1371, 1376 (2002), *vacated on other grounds*, 537 U.S. 802 (2002) ("[A] construction that renders the claimed invention inoperable should be viewed with extreme skepticism.").

Unfortunately, the claim itself provides little guidance in its construction, as the language in dispute is ambiguous and open to multiple interpretations. However, when the disputed term is read in the "context of the entire patent, including the specification," a clear meaning emerges. *Phillips*, 415 F.3d at 1313; *see also Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215 (Fed. Cir. 2008) (holding courts "may construe claims to sustain their validity when the claims are amenable to more than one reasonable construction"). When properly read and interpreted, Claim 1 requires each carrier rail to have at least two longitudinally spaced apart half-rings rigidly connected to it, where complementary half-rings pair together to form a ring. The specifications of the '695 Patent support this interpretation:

> At least two half-rings (16) are provided longitudinally spaced apart and rigidly connected with each of the carrier rails (20), and which pairwise form a ring (14). (Doc. 1-4 at 1)

> \* \* \*

> The binder ring mechanism is comprised essentially of a housing, at least two half-rings 16 provided longitudinally spaced from each other and extending through openings 12 in the housing wall 13 and, with complementary half-rings, pairwise forming a ring 14, as well as an operating lever 18 for opening and closing the rings. The half-rings 16, which pairwise form rings 14, are rigidly secured to two carrier rails 20 . . . which are stamped to the housing flanks 28. (Doc. 1-4 at 16).

> \* \* \*

> At least two longitudinally spaced-apart half-rings 16, which with complementary half-rings pairwise form a ring 14, are rigidly connected with the carrier rails 20. (Doc. 1-4 at 18).

It is undisputed that the claim language at issue refers to the two half-rings as item 16, the ring as item 14, and the carrier rails as item 20. The below figures from the '695 Patent confirm that the disputed language should be properly interpreted to mean that the complementary half-rings on each of the two carrier rails form a ring once they come together:



This Court is thus satisfied that the specifications eliminate any ambiguity in this case, and adopts Bensons' interpretation of the disputed language: the specifications "clearly describe[] and illustrate[] each of the two carrier rails as having at least two half-rings that are longitudinally separated and rigidly connected in a manner that allows them to form a ring when they come together" (Doc. 89 at 9). While the claim language does not include the word "complementary," this interpretation, unlike World Wide's, is illustrated by the intrinsic record and consistent with the entirety of the Patent. *See Phillips*, 415 F.3d at 1313.

Interestingly, World Wide refuses to retreat from its position that the disputed claim language is unambiguous, despite the fact it provides this Court with at least two reasonable interpretations. According to World Wide, its position relies expressly on the claim language, and an absurd result cannot be avoided by redrafting the claims (Doc. 93 at 6–8, 13–14). This argument misses the point. While it is not the function of this Court "to rewrite claims to preserve their validity," *Allen Eng'g Corp. v. Bartell Indust., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002), it must "construe claims, if

9

possible, so as to sustain their validity . . . ." *Quantum Corp. v. Rodine, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995); *see also Lucent Techs.*, 525 F.3d at 1215. Contrary to World Wide's assertion, this Court's interpretation would not be an impermissible rewriting of the disputed claim language, but rather a reasonable construction in light of the entire Patent.

World Wide relies on a legion of cases, each cautioning against redrafting claims to contradict their plain language, or instructing courts to construe claims based on the patentee's version of the claim as drafted when the claim is susceptible to only one reasonable construction. *See, e.g.*, *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 782 (Fed. Cir. 2010); *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004). These cases do not apply because as World Wide seems to recognize, the language at issue is subject to multiple constructions. Even so, when read in light of the intrinsic record, it becomes clear that the disputed claim limitation covers half-rings on each of the two carrier rails that form a ring once they come together. This construction is consistent with the plain language which, admittedly, is poorly written. However, this is one of those instances where visual representations, such as those included in the '695 Patent, flesh out the words of disputed terms.

In its last attempt to convince this Court that its approach is the proper construction, World Wide argues that Bensons' position is barred by the so-called doctrine of "prosecution history estoppel" (Doc. 93 at 8–10). "[P]rosecution history estoppel prevents a patent owner from recapturing through the doctrine of equivalents subject matter surrendered to acquire the patent." *Duramed Pharm., Inc. v. Paddock Labs., Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002)). In other words, "prosecution history estoppel limits the doctrine of equivalents when an applicant makes a narrowing amendment

10

for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to an examiner." *American Calcar, Inc. v. American Honda Motor Co., Inc.*,651 F.3d 1318, 1340 (Fed. Cir. 2011) (citing *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1344 (Fed. Cir. 2005)).

World Wide argues the doctrine applies in this case because the patentee amended the disputed claim limitation during the prosecution of the '695 Patent. Specifically, the patentee amended the claim from a ring binder mechanism "with at least two half–rings . . . rigidly connected with each of the carrier rails and which . . . pairwise form a ring" to a ring binder mechanism comprising "at least two half-rings . . . wherein said half rings . . . together form a ring" (Doc. 93 at 9–10). Apparently, the change was made in response to the examiner's concerns that the claims as originally drafted were "a literal translation into English from a foreign document and [were] replete with grammatical and idiomatic errors" (Doc. 93 at 9). Even so, prosecution history estoppel is inapplicable in this case, as Bensons is not asserting an infringement claim under the doctrine of equivalents. Nothing in the record indicates that Bensons is attempting to "recapture" as an equivalent subject matter surrendered during prosecution. Bensons points to the specifications, as well as the plain language of the disputed limitation, in support of a construction that is consistent with the Patent as a whole. Bensons is not attempting, as World Wide asserts, to undo the patentee's amendment and return the disputed language to its original form.

### *Claim Comparison: The Accused Products Infringe on the '695 Patent*

Bensons alleges that the accused products infringe five different claims of the '695 Patent, including one independent claim (Claim 1) and four dependent claims (Claims 2, 7, 8, and 10). The dependent claims are all dependent on Claim 1 and, therefore, every limitation in Claim 1 must appear

11

in the accused products for a finding of infringement. As previously stated, the parties do not appear to dispute the relevant aspects of the accused products' structure or operation. Rather, World Wide's entire argument on the issue of infringement rests on the disputed language of Claim 1. *See Johnson Worldwide Assocs.*, 175 F.3d at 988 (holding that infringement turns solely on claim interpretation when aspects of accused products are undisputed). Instead of arguing that other limitations of the '695 Patent are absent from the accused products, World Wide indicated in a footnote its desire to assert other non-infringement positions by summary judgment at a future junction in this litigation. This Court, however, rejects such a piecemeal approach to summary judgment.

Because the question of infringement in this case "collapse[d] to one of claim construction," this Court could consider summary judgment without comparing the accused products to the claims of the '695 Patent. *Athletic Alternatives, Inc.*, 73 F.3d at 1578. However, Bensons has not moved for summary judgment, and therefore the relevant aspects of the accused product's structure and operation is an issue now best reserved for trial.

## CONCLUSION

For the foregoing reasons, World Wide's Motion for Summary Judgment is denied.

IT IS SO ORDERED.

                                           s/ *Jack Zouhary*
                                           JACK ZOUHARY
                                           U. S. DISTRICT JUDGE

July 13, 2012